# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF ALABAMA
# SOUTHERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) |
| | ) |
| vs. | ) Criminal Action No. 15-00197-KD-N |
| | ) |
| JAMES HILMER WADE, JR., | ) |
| | ) |
| Defendant. | ) |

## ORDER

This action is before the Court on the Motion for Release, letters in support, motion for compassionate release pursuant to 18 U.S.C. § 3582(c) and the Coronavirus Aid, Relief, and Economic Security Act (CARES Act), Pub. L. No. 116-136, § 12003(b)(2), 134 Stat. 281, 516, filed *pro se* by Defendant James Hilmer Wade, Jr. (Docs. 102, 104, 105)[1] and the United States' response (Doc. 107).

**I.    Background**

In August 2015, Defendant James Hilmer Wade, Jr. (Wade) and his co-defendant were indicted for offenses related to counterfeiting. (Doc. 1-1). Wade was charged with a counterfeiting conspiracy (Count One) and uttering counterfeit obligations (Count Four). (Doc. 1-1). Wade pled guilty to Count One. (Doc. 37 (Guilty Plea)). His total offense level was 13, his criminal history category was IV and his sentencing guideline range was 24 to 30 months. Wade was sentenced to

---

[1] Wade moves pursuant to 18 U.S.C. 3142(i)(4) and 18 U.S.C. 3145(b). (Doc. 102 at 1). However, the Court construes Wade's motion as brought pursuant to 18 U.S.C. § 3582(c) and the CARES Act. See United States v. Brown, 748 Fed. Appx. 286, (Mem)–287 (11th Cir. 2019) (citing United States v. Jordan, 915 F.2d 622, 624-25 (11th Cir. 1990)) ("Courts are obligated to 'look behind the label' of pro se inmate filings to determine whether they are cognizable under 'a different remedial statutory framework.'" ).

a total term of twenty-four (24) months as to Count One followed by a three (3) year term of supervised release. (Doc. 54).

In August 2018, the Court determined, and Wade admitted, that Wade violated the terms of his supervised release. (Doc. 76). The Court revoked the supervised release term; Wade was sentenced to 60 days. (Id.). The Court again revoked Wade's supervised release term in May 2019 after Wade again violated of the terms of his conditions of supervised release. (Doc. 88). Again, in May 2020, the Court again found Wade violated the terms of his supervised release. (Doc. 101). On June 5, 2020, Wade was sentenced to a term of ten months upon revocation of his supervised release term. (Doc. 101).

In July 2020, Wade was housed in the Escambia County Jail awaiting transfer. (Doc. 102). By September 2020, Wade was located at the Plaquemine's Parish Detention Center (PPDC) in Louisiana. (Doc. 104). Wade stated he remained in the PPDC as of October 2020. (Doc. 105). To date, the Court has ascertained that he is in the custody of the United States Marshal. The Plaquemines Parish Sheriff's Office indicates Wade is located at the PPDC. See *Plaquemines Parish Sheriff's Office Jail Roster,* Plaquemines Parish Sheriff's Office, http://plaquemines.lavns.org/roster.aspx (last updated December 3, 2020).

While Wade was at the Escambia County Correctional Center awaiting transfer, he filed a Motion for Release to home confinement on the basis that COVID-19 endangered his life due to his "chronic illnesses" of asthma and Hepatitis C. (Doc. 102). Wade stated that inmates at Escambia County Jail had tested positive for COVID-19. (Id.). Soon thereafter, Wade wrote the Court stating that he had been transferred to the Plaquemines Parish Detention Center in Louisiana and again moved the Court to release him to home confinement (Doc. 104). More recently, Wade wrote the Court stating he was still at the Detention Center and asked the Court to modify his 10-

month revocation sentence to time served, with the remainder added to his term of supervised release. (Doc. 105). He also moved the Court for compassionate release pursuant to 18 U.S.C. § 3582(c) and the Coronavirus Aid, Relief, and Economic Security Act (CARES Act), Pub. L. No. 116-136, § 12003(b)(2), 134 Stat. 281, 516. (Doc. 105). Wade identifies "[i]f released Home Plan is father's residence, where I will every opportunity to finish all duties and requirements of the court and probation office. Will work from said home[,] proper protective equipment for Health Org. (masks) also Collins counseling [sessions] to be a productive member of society…" (Doc. 102 at 2). And see (Doc. 105 at 2).

## II.  Exhaustion

In relevant part, the compassionate release provision of 18 U.S.C. § 3582(c), as amended by the First Step Act of 2018, provides that "the court . . . upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier, may reduce the term of imprisonment" after considering the [applicable] factors set forth in 18 U.S.C. § 3553(a)", if the court finds extraordinary and compelling reasons which warrant a reduction in sentence. 18 U.S.C. § 3582(c)(1)(A)(i); First Step Act of 2018, Pub. L. 115-391, § 603(b), 132 Stat. 5194, 5239.

According to the Federal Bureau of Prisons website, Wade is not in the Bureau of Prisons custody. See https://www.bop.gov/mobile/find_inmate/byname.jsp#inmate_results. However, the Court has ascertained that he is in the custody of the United States Marshal awaiting transfer to a federal prison. Because Wade is not yet at a BOP facility, he is unable to apply for compassionate release through the BOP's normal administrative process. As a result, "[t]he United States does not dispute that Wade's motion to modify his sentence is properly before the Court." (Doc. 107 at

9, n.7). Thus, Wade may seek judicial modification of his term of imprisonment where "extraordinary and compelling reasons warrant such a reduction." 18 U.S.C. § 3582(c)(1)(A)(i). The Court must also address the applicable factors set out in 18 U.S.C. § 3553(a).

### III.    Motion for Compassionate Release

Once a sentence is imposed, the "authority of a district court to modify an imprisonment sentence is narrowly limited by statute." United States v. Phillips, 597 F.3d 1190, 1194-95 (11th Cir. 2010); United States v. Shaw, 711 Fed.Appx. 552, 554-55 (11th Cir. 2017) (same). Specifically, the district court may not modify a term of imprisonment once it has been imposed except as set out in 18 U.S.C. § 3582(c). See United States v. Pubien, 805 Fed.Appx. 727, 729 (11th Cir. Feb. 25, 2020) (citing 18 U.S.C. § 3582(c)).

The compassionate release provision of 18 U.S.C. § 3582(c)(1)(A)(i) provides that the district court "may reduce the term of imprisonment (and may impose a term of probation or supervised release with or without conditions that does not exceed the unserved portion of the original term of imprisonment), after considering the [applicable] factors set forth in 18 U.S.C. § 3553(a)," if the district court finds that "extraordinary and compelling reasons warrant such a reduction" and the reduction is "consistent with applicable policy statements issued by the [United States] Sentencing Commission." 18 U.S.C. § 3582(c)(1)(A).

"Extraordinary and compelling" reasons are not defined in the statute. Instead, Congress gave the Sentencing Commission the duty to promulgate general policy statements regarding sentence modifications pursuant to 18 U.S.C. § 3582(c)(1)(A) and stated that the Commission "shall describe what should be considered extraordinary and compelling reasons for sentence reduction, including criteria to be applied and a list of specific examples." 28 U.S.C. § 994(t).

Congress also stated that "[r]ehabilitation of the defendant alone shall not be considered an extraordinary and compelling reason." Id.

Before the First Step Act was enacted, the Sentencing Commission promulgated the following policy statement:

> Upon motion of the Director of the Bureau of Prisons under 18 U.S.C. § 3582(c)(1)(A), the court may reduce a term of imprisonment (and may impose a term of supervised release with or without conditions that does not exceed the unserved portion of the original term of imprisonment) if, after considering the factors set forth in 18 U.S.C. § 3553(a), to the extent that they are applicable, the court determines that—
>
>> (1) (A) Extraordinary and compelling reasons warrant the reduction; or . . .
>>
>> (2) The defendant is not a danger to the safety of any other person or to the community, as provided in 18 U.S.C. § 3142(g); and
>>
>> (3) The reduction is consistent with this policy statement.

U.S.S.G. § 1B1.13.[2]

The Application Notes to the Policy Statement include four examples of extraordinary and compelling reasons for consideration of a reduction in sentence under § 3582(c)(1)(A): (A) Medical Conditions of the Defendant; (B) Age of the Defendant[3]; (C) Family Circumstances; and (D) Other Reasons. Wade argues his asthmatic bronchitis (asthma) and Hepatitis C diagnoses "are chronic enough [that he] could die from COVID-19." (Doc. 102 at 1; Doc. 104 at 1). Thus, his

---

[2] Subparagraph (B) provides for consideration of compassionate release if "[t]he defendant (i) is at least 70 years old; and (ii) has served at least 30 years in prison pursuant to a sentence imposed under 18 U.S.C. § 3559(c) for the offense or offenses for which the defendant is imprisoned[.]" Wade is 51 years old so subparagraph (B) cannot apply to him.

[3] Subparagraph (B) requires the defendant be at least 65 years old. As noted *supra*, Wade is 51 years old so this example does not apply to him.

explanation may fall within either Application Note 1(A)(ii)(I) "Medical Conditions of the Defendant" or 1(D) "Other Reasons."

To qualify for compassionate release under Subsection (A), Wade must demonstrate he is:

> (I) suffering from a serious physical or medical condition,…that substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover.

U.S.S.G. §1B1.13 cmt. n. 1(A)(ii)(I).[4] More specifically, Wade argues he has two "chronic illnesses"—asthmatic bronchitis and Hepatitis C—which increase his risk for COVID-19. (Docs. 102 at 1, 104 at 1, 105 at 1). In Wade's September letter, he also notes he "had some flu like signs" and that he is "in fear for [his] life due to the COVID-19 virus in this facility…" (Doc. 104 at 1). Wade does not mention his flu-like symptoms in his October letter; Wade again references his "2 chronic illnesses Asmatic [sic] Bronchitis (asthma) and Hepatitis …C" (Doc. 105 at 1).

With respect to Wade's Hepatitis C diagnosis, the CDC advises that "chronic liver disease…*might* increase your risk for severe illness from COVID-19. See *People with Certain Medical Conditions,* Centers for Disease Control and Prevention, https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html (last updated November 30, 2020) (emphasis added). Regarding Hepatitis C specifically, the CDC states, "[c]urrently, [as of May 5, 2020] we have no information about whether people with hepatitis B or hepatitis C are at increased risk for getting COVID-19 or having severe COVID-19." *Coronavirus Disease 2019 (COVID-19): People with Liver Disease*, Centers

---

[4] Wade does not allege that he has a terminal illness, that he has serious functional or cognitive impairment, or that he is experiencing deteriorating physical or mental health because of the aging process. He does not allege that his family circumstances meet the criteria 1(A) or that he meets the age requirement in 1(B) (at least 65 years old). U.S.S.G. § 1B1.13, cmt. n. 1(A)(i) & (ii)(II)(III), (B) & (C).

for Disease Control and Prevention, https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/liver-disease.html (last updated May 5, 2020). It further recognizes that Hepatitis C is a liver infection that may result in long-term, chronic infections affecting the liver. See *Viral Hepatitis: Hepatitis C Information*, Centers for Disease Control and Prevention (last reviewed July 28, 2020), https://www.cdc.gov/hepatitis/hcv/index.htm. Wade has not alleged that he has suffered liver damage or other long-term medical issues associated with or resulting from Hepatitis C. At sentencing, Wade did state he had Hepatitis C. (Doc. 50 at 12). But, Wade does not provide any medical documentation to show the details of his Hepatitis C diagnosis like when he was diagnosed or documentation to show how it has impacted his health. See United States v. Roden, 2020 WL 3871168, at *3 (W.D. Va. July 9, 2020) (finding defendant in his forties, recently diagnosed with Hepatitis C, did not meet his burden of showing extraordinary and compelling reasons to justify his release); United States v. Hilliard, No. 17 CR 35-01 (VB), 2020 WL 3182778 (S.D.N.Y June 15, 2020) (denying a motion to release by a defendant who was forty years old with asymptomatic hepatitis C but no other high-risk ailments); and United States v. Abeyta, 2020 WL 4593216, at *3 (D. Colo. Aug. 11, 2020) (denying compassionate release on the basis of Hepatitis C where there was no evidence before the court that the defendant was actually immunocompromised or had sustained liver damage).

Additionally, Wade does not argue that having Hepatitis C diminishes his ability to provide self-care while in prison.[5] He does not provide any documentation or detail regarding the severity

---

[5] The Bureau of Prison's Program Statement No. 5050.50 addressing "Compassionate Release/Reduction in Sentence" Procedures for Implementation of 18 U.S.C. §§ 3582 and 42059g)" identifies a "Debilitated Medical Condition" and states that reduction in sentence "consideration may also be given to inmates who have an incurable, progressive illness or who have suffered a debilitating injury from which they will not recover. The BOP should consider a RIS if the inmate is: Completely disabled, meaning the inmate cannot carry on any self-care and is totally

of his Hepatitis C diagnosis or how it has affected his health to date. See e.g., United States v. Zamor, 460 F.Supp.3d 1314, 1317 (S.D. Fla. 2020) (denying petitioner's motion for compassionate release where he claimed to have asthma and liver disease but provided no details as to the nature or severity of his ailments); United States v. Pearson, 2020 WL 5095238, at *3 (M.D. Fla. Aug. 28, 2020) (holding hepatitis C, under control, and benign mass under rib cage do not support compassionate release); United States, v. Barnes, 2020 WL 3606354 (E.D. La. July 2, 2020) (Inmate with asymptomatic hepatitis C as well as a bullet wound in his lung does not present risk factor; release denied).[6] Likewise, Wade does not allege that his health conditions are significantly deteriorating, and "the BOP Director has not found COVID-19 alone to be a basis for compassionate release." United States v. Alvarez, 2020 WL 2572519, at *6 (S.D. Fla. May 21, 2020) (quoting United States v. Harris, 2020 WL 1969951, at *2 (M.D. Fla. Apr. 24, 2020)).

As to Wade's contention that he suffers from "asthmatic bronchitis (asthma)," CDC guidance indicates individuals with moderate to severe asthma and people with chronic obstructive pulmonary disease are at a higher risk of contracting severe illness due to COVID-19. *People with*

---

confined to a bed or chair; or Capable of only limited self-care and is confined to a bed or chair more than 50% of waking hours."

[6] See also United States v. Barton, 2020 WL 5994551, at *3 (M.D. Fla. Oct. 9, 2020) (denying motion for compassionate release for petitioner claiming to suffer from liver damage, sciatica, and obesity where petitioner failed to allege these conditions inhibited his ability to care for himself in prison); United States v. Crawford, 2019 WL 6615188, at *5 (M.D.N.C. Dec. 5, 2019) (finding that Crawford's "medical records reveal a variety of ailments, including Hepatitis C, carpal tunnel syndrome, hypertension, esophageal reflux, urinary tract infection, and osteoarthrosis for which he has received extensive treatment" but Crawford did not demonstrate that "any of his illnesses have substantially diminished his ability to care for himself while incarcerated in the BOP"); United States v. Marquez, 2020 WL 6044319, at *5-6 (E.D. Cal. Oct. 13, 2020) (denying compassionate release motion where the court "err[ed] on the side of caution" in concluding 36 year old who has Hepatitis C "may be immunocompromised and have liver damage" but found conditions of confinement did not hinder defendant's ability to provide self-care and it did not appear there is evidence defendant was suffering or receiving inadequate care for Hepatitis C); United States v. Abeyta, No. 14-cr-00029-PAB-01, 2020 WL 4593216, at *3 (D. Colo. Aug. 11, 2020) (denying compassionate release on the basis of Hepatitis C where there was no evidence before the court that the defendant was actually immunocompromised or had sustained liver damage).

*Certain Medical Conditions,* Centers for Disease Control and Prevention, https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html (last updated November 30, 2020). And see (Doc. 102 at 1 (classifying his illness as "asmatic broncitis [sic] (asthma)); Doc. 105 at 1 (same)). The CDC explains that chronic obstructive pulmonary disease includes chronic bronchitis. *People with Certain Medical Conditions,* Centers for Disease Control and Prevention, https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html (last updated November 30, 2020). The CDC does not assess risk factors for "asthmatic bronchitis" specifically. Wade does not provide any medical documentation as to this diagnosis; he does not specify the severity of his asthma nor does he specify whether he suffers from chronic bronchitis.

Moreover, for a medical condition to qualify as an extraordinary and compelling reason, the condition must "substantially diminish[ ] the ability of the defendant to provide self-care within the environment of a correctional facility and [is one] from which he or she is not expected to recover." U.S.S.G. § 1B1.13 n.1(A)(ii). Here, Wade has failed to demonstrate the severity of his conditions[7] or the effect these conditions have on his ability to care for himself while incarcerated. United States v. Smith, 2020 WL 2512883, at *6 (M.D. Fla. May 15, 2020); United States v. Johnson, 2020 WL 2449343, at *1 (S.D. Ga. May 12, 2020).[8] And see (Doc. 107 at 9-10

---

[7] Though Wade asserts he "had some flu signs" in September 2020, Wade did not assert his flu-like symptoms worsened in his October letter to the Court; he did not mention these symptoms at all. (Doc. 105). And, as with Wade's Hepatitis C and asthmatic bronchitis conditions, Wade did not assert his "flu signs" diminished his ability to provide self-care while in prison.

[8] The Bureau of Prison's Program Statement No. 5050.50 addressing "Compassionate Release/Reduction in Sentence" Procedures for Implementation of 18 U.S.C. §§ 3582 and 42059g)" identifies a "Debilitated Medical Condition" and states that reduction in sentence "consideration may also be given to inmates who have an incurable, progressive illness or who have suffered a debilitating injury from which they will not recover. The BOP should consider a RIS if the inmate is:   Completely disabled, meaning the inmate cannot carry on any self-care and is totally

(responding to Wade's motion, the United States acknowledges Wade did not offer evidence of his medical conditions or the ability of PPDC to provide adequate medical care)). Wade also alleges inmates at the PPDC have COVID-19 and because of his "chronic illnesses…COVID-19 could kill [him] without proper medical attention." (Doc. 105 at 2). But he does not allege, nor has he offered evidence, that the PPDC is unable to provide adequate medical care.

Application Note 1(D), the district court may consider "Other Reasons" if "[a]s determined by the Director of the Bureau of Prisons, there exists in the defendant's case an extraordinary and compelling reason other than, or in combination with, the reasons described in subdivisions (A) through (C)." Id., cmt. n. (1)(D). In its present version, subparagraph (D) "leaves identification of other 'extraordinary and compelling reason[s]' to the Director of the Bureau of Prisons." United States v. Fox, No. 2:14-CR-03-DBH, 2019 WL 3046086, at *3 (D. Me. July 11, 2019). But now that the First Step Act allows the inmate to file for compassionate release without the BOP's support, it is unclear what "other" reasons can be relied upon for compassionate release. However, the Court finds that until the Sentencing Commission amends its Policy Statement "those other extraordinary and compelling reasons should be comparable or analogous to what the Commission has already articulated as criteria for compassionate release." United States v. Fox, 2019 WL 3046086, at *3. Wade's concerns about contracting COVID-19 because of "the COVID-19 virus in this facility[,]" PPDC, standing alone or in combination with his alleged "chronic conditions," is not comparable or analogous to any of the criteria identified in the Policy Statement. (Doc. 104 at 1).

---

confined to a bed or chair; or Capable of only limited self-care and is confined to a bed or chair more than 50% of waking hours."

Additionally, the Court must consider the relevant sentencing factors found in 18 U.S.C. § 3553(a). See 18 U.S.C. § 3582(c)(1)(A). After consideration, the Court finds the relevant factors in Section 3553(a) do not weigh in favor of early release. In addition to the conduct underlying Wade's instant offense of conviction, Wade's term of supervised release has been revoked three times for failing to participate in mental health and drug addiction treatment, and for the continued use of drugs. This indicates that Wade is a danger to himself and to the community, even while supervised.

Based on the foregoing, as well as Wade's criminal history and offense of conviction,[9] he has demonstrated a lack of respect for the law and a disregard for the terms of his supervision. And see United States v. Wells, 2020 WL 4747717, *3 (E.D. La. Aug. 17, 2020) (finding same for defendant whose previous probationary periods had been revoked "no less than five times."). Early release would not meet the need for the sentence imposed to "to promote respect for the law," "to provide just punishment for the offense," to "afford adequate deterrence to criminal conduct" and "to protect the public from further crimes of the defendant." 18 U.S.C. § 3553(a)(2)(A), (B), & (C).

**IV.    CARES Act**

Wade also moves for relief pursuant to the Coronavirus Aid, Relief, and Economic Security Act (CARES Act), Pub. L. No. 116-136, § 12003(b)(2), 134 Stat. 281, 516; his motion is **DENIED**. See (Doc. 105). Previously, under 18 U.S.C. § 3624(c)(2), the Bureau of Prisons had authority to "place a prisoner in home confinement for the shorter of 10 percent of the term of imprisonment

---

[9] Among the factors to be considered when imposing a sentence, the Court may consider the "nature and circumstances of the offense and the history and characteristics of the defendant." 18 U.S.C. § 3553(a)(1).

of that prisoner or 6 months." Under the CARES Act, effective March 27, 2020, the BOP Director was permitted to lengthen the maximum amount of time a prisoner may be placed in home confinement, in certain circumstances and during a specified period of time after the declaration of national emergency due to COVID-19, if the Attorney General found that emergency conditions would materially affect the functioning of the BOP. CARES Act, Pub. L. 116-136, § 12003(b)(2).[10]

On April 3, 2020, Attorney General William Barr made this finding and gave the Director authority to exercise this discretion. The Director was directed to "immediately review all inmates who have COVID-19 risk factors, as established by the CDC, starting with the inmates incarcerated at FCI Oakdale, FCI Danbury, FCI Elkton, and similarly situated facilities where you determine that COVID-19 is materially affecting operations." Memorandum from Attorney General William Barr to Director of Bureau of Prisons, Increasing Use of Home Confinement at Institutions Most Affected by COVID-19 (April 3, 2020), https://www.justice.gov/file/1266661/download.

However, the CARES Act did not give the Court authority to direct the BOP to consider Wade for home confinement or to direct the BOP to place him in home confinement for the remainder of his sentence. Under 18 U.S.C. § 3621(b), it is the BOP that "shall designate the place of the prisoner's confinement".

## V. Conclusion

---

[10] "Home Confinement Authority. During the covered emergency period, if the Attorney General finds that emergency conditions will materially affect the functioning of the Bureau, the Director of the Bureau may lengthen the maximum amount of time for which the Director is authorized to place a prisoner in home confinement under the first sentence of section 3624(c)(2) of title 18, United States Code, as the Director determines appropriate." CARES Act, P.L. 116-136, § 12003(b)(2) (2020).

For the reasons stated herein, Wade's motion for compassionate release pursuant to 18 U.S.C. § 3582(c)(1)(A)(i) (Doc. 102) is **DENIED**; and Wade's motion pursuant to the Coronavirus Aid, Relief, and Economic Security Act (CARES Act), Pub. L. No. 116-136, § 12003(b)(2), 134 Stat. 281, 516 is also **DENIED.**

**DONE** and **ORDERED** this **4th** day of **December 2020**.

s / Kristi K. DuBose
KRISTI K. DuBOSE
**CHIEF UNITED STATES DISTRICT JUDGE**
